CANTON TRUST COMPANY, Appellant, v. CYNTHIA P. DURRETT, and OSCAR H. DURRETT; DANIEL T. LIGON, Administrator of Estate of DANIEL LIGON, Interpleader.—9 S. W. (2d) 925.

Division One, October 3, 1928.

*Hilbert & Hilbert* and *Jeffries, Simpson & Plummer* for appellant.

*H. S. Rouse, Inghram & Inghram* and *Llewellyn & Brown* for respondents.

LINDSAY, C.—The first count of the petition is in the ordinary form of an action in ejectment, for possession of 359 acres of land situated in Lewis County. Plaintiff's claim of ownership and right to possession is founded upon the purchase of the property by plaintiff on March 28, 1925, at a sale under a deed of trust executed by defendants, Cynthia P. Durrett, and Oscar H. Durrett her husband, to secure the payment of a note executed by them to the plaintiff.

The second count of the petition alleged the purchase of the property at sale under the deed of trust, demand for possession of the premises, defendants' refusal to give possession, and that there were growing crops on the premises, and asked the appointment of a receiver to harvest such crops, and to deliver the money to be received therefor into court for the benefit of the plaintiff, upon final judgment; and, that meanwhile, defendants be enjoined from interfering therewith. A restraining order was issued, and a receiver appointed who harvested the crops and made deposit of the net proceeds thereof. Daniel T. Ligon, as administrator of Daniel Ligon, deceased, by leave of court, filed his interplea, claiming the growing crops and all proceeds thereof by virtue of certain chattel mortgages, and a bill of sale given to the decedent by defendants. Daniel Ligon was the father of Cynthia P. Durrett. It was agreed that Cynthia P. Durrett was the common source of title.

The evidence showed that on September 18, 1922, Cynthia P. Durrett and her said husband executed to plaintiff their promissory note in the sum of $5950, due four years after date, and at the same time executed their deed of trust upon the property to secure the payment of said note. This deed of trust was subject to a prior deed of trust in favor of one J. O. Boyd, of Keokuk, Iowa, given to secure an indebtedness of $13,000.

By the note given by defendants to plaintiff, the defendants promised to pay the sum mentioned "with interest at the rate of seven per cent per annum from date until paid, and if the interest thereon

be not paid annually or when due, the same shall, when due, be added to and become part of said principal and bear interest at the same rate."

The deed of trust securing said note had a provision that—"should the said first party fail, or refuse to pay the said debt, or the said interest or any part thereof, when the same or any part thereof shall become due and payable according to the true tenor, date and effect of said note, then the whole shall become due and payable and this deed shall remain in force," followed by the usual provision for sale of the property at the request of the legal holder of the note.

No interest was paid upon said note by defendants. On January 13, 1925, defendant, Cynthia P. Durrett, was adjudged bankrupt by the District Court of the United States for the Northern Division of the Eastern District of Missouri. Schedule of the estate of the bankrupt was filed, which, it is said, listed and included the lands in controversy, showing two encumbrances thereon, the first, the deed of trust in favor of said Boyd, securing an indebtedness of $13,000, and the second the deed of trust in favor of plaintiff of date of September 18, 1922, securing the note mentioned.

On the 3d day of March, 1925, plaintiff made application to the referee in bankruptcy for an order in behalf of plaintiff, as holder of the second deed of trust upon said lands, for—"an order granting it the right to cause the lands described to be sold by the trustee in its deed of trust, for the purpose of satisfying the indebtedness in the deed of trust described after paying the costs and expenses of executing the trust, provided the surplus if any to be paid to the trustee of the bankrupt estate of Cynthia P. Durrett." The application stated that "both principal and interest on said note was due and unpaid; that said real estate could not be sold by the trustee in bankruptcy for its actual value because of the homestead rights of Cynthia P. Durrett and statutory rights of Oscar H. Durrett therein which they had refused to release."

Proof was made of the service upon defendants of a copy of the application and of notice of the time of presenting the same. The order of the referee recites the application as stating "that default has been made in the payment of the interest on the note in said deed of trust described, and that under the terms and conditions of said deed of trust both principal and interest on said note is due and unpaid."

The order runs: "Upon examination of said application and service by the court, it is found that the matters and "things set forth in the said application are true."

The order following was, that—"the Canton Trust Company, holder of the second deed of trust, cause said lands to be sold thereunder as is provided by law, and the conditions of said deed of trust, first

paying the costs and expenses of sale; and next apply the proceeds of sale to the payment of the note and interest in said deed of trust described, the remainder over to be paid to the trustee in bankruptcy." The order further required that the trustee in bankruptcy report said sale to the court.

On March 28, 1925, the trustee in said deed of trust sold the same pursuant to notice, and the plaintiff became the purchaser and received the deed from the trustee under said deed of trust. The amount of purchase price at said sale was $3350.

This suit was filed on the 8th day of June, 1925. The claim made by the interpleader for the proceeds of the crops grown on the premises was based upon three chattel mortgages given by defendants to Daniel Ligon upon crops growing on the land. The first of these chattel mortgages was dated March 17, 1925; the next March 31, 1925, and the third May 26, 1925, and the bill of sale also of growing crops, given by defendants to said Daniel Ligon, was dated the —— day of June, 1925, and acknowledged June 10, 1925. The court found in favor of defendants upon the count in ejectment. No declarations of law were asked. Necessarily, the basis of this finding was that the note for $5950 secured by the deed of trust had not become due under its terms, and there was no default in the payment of interest, or default under the terms of the deed of trust given securing the payment of the note; and that the sale thereunder was premature and invalid. Upon the issue between the plaintiff and the interpleader, the court found in favor of the interpleader.

As the case is presented upon appeal, plaintiff claims the order of the referee in bankruptcy for the sale of the property under the deed of trust was *res adjudicata* upon the question of default and right to sell. Defendant's contention is that by the terms of the agreement embodied in the note there was no default; that the sale under the deed of trust was unauthorized and invalid, and that the order of the referee in bankruptcy was not an authorized and valid adjudication of plaintiff's right to cause the property to be sold under the deed of trust.

There was no condition in the deed of trust whereby a breach of its terms could be declared, other than the condition of failure or refusal to pay the indebtedness expressed in the note, "according to the true tenor, date and effect of said note." The note and deed of trust were to be construed together so that effect may be given to all of the terms of both if possible. The deed of trust referred to the note itself as expressing the condition under which default would arise. Under the rulings in numerous cases of the appellate courts of this State, there was under the terms

of this note and deed of trust, no breach of condition because of the fact that no interest had been paid. The note does not provide that interest shall be paid annually. [Koehring v. Muemminghoff, 61 Mo. 403; Frye v. Shepherd, 173 Mo. App. 200, where many authorities are cited and reviewed; Wilson v. Reed, 270 Mo. 400, 406; First National Bank v. Kirby, 175 S. W. 926, 929.] The ruling in these cases is in accord with the rulings elsewhere upon instruments of like tenor. See annotation 10 American Law Reports, page 1002. The general rule deduced from all the authorities is there stated: "The authorities hold that the term 'per annum' in a contract providing for the payment of a certain rate of interest per annum, is intended only as a measure of the rate with respect to time, and does not require the payment of interest annually." There is no provision in the note in question that interest shall be payable annually, but the provision is that the interest, not paid annually or when due, shall, when due, be added to and become a part of the principal and bear interest at the same rate. The note in Wilson v. Reed differs from the one here in no respect, except that in this note the words "or when due" follow the word "annually." The added words do not take it out of the rule stated. Under the rule in the cases cited the interest on the note was not collectible before the maturity of the note. The condition of the mortgage or deed of trust not having been broken, it was not subject to foreclosure, nor could the defendant be dispossessed under the mortgage before condition broken. [Wilson v. Reed, 270 Mo. 405, and authorities there cited.] The foregoing conclusion results and must govern in the instant case under the rule of construction of such instruments followed by this court unless it must be held that the order of the referee in bankruptcy was an adjudication that the condition was broken, so as to be *res adjudicata* on that question. The contract expressed in the note was one made in this State and to be performed in this State; the lien was one upon property situated in this State, and its validity and effect were properly to be determined under the local law. In passing upon the rights of the parties to such a contract in proceedings in bankruptcy the courts of the United States follow the state law as declared by the highest court of the State. [Hiscock v. Varick Bank, 206 U. S. 28, 37; Benedict v. Ratner, 268 U. S. 359.] However, the fact that it is the local law which is the governing law, and is to be applied by the court in bankruptcy, does not conclusively settle the issue here presented.

The real estate in question was in the possession of defendant Cynthia P. Durrett, the bankrupt, at and after the time of the adjudication in bankruptcy. Possession by the bankrupt at and after adjudication is possession by the bankruptcy court. [5 Remington on

Bankruptcy (3 Ed.) sec. 2365.] The property was in the custody of the law. "It is to be said, in general, that the bankruptcy court is a court of general jurisdiction in bankruptcy matters, and that its judgments, decrees and orders possess all the attributes of finality and estoppel accorded to domestic judgments emanating from courts of general original jurisdiction." [Remington, sec. 2329.] "The principle of *res adjudicata* is applied as between federal and state courts." [23 Cyc. 1219.]

This action is collateral to the bankruptcy proceedings and the order of sale had therein. If a jurisdiction existed to make the order, the order itself cannot be attacked in this collateral proceeding, nor the sale made pursuant thereto, for mere error of the referee in failing to apply the state rule of law, in determining whether there was a breach of condition. Jurisdiction to decide does not mean merely the power to decide correctly. The application alleged that the principal and interest of the note secured by the deed of trust was due and unpaid. This was a finding necessary to be made as a basis for the order that the mortgagee should cause the land to be sold under its deed. A bankruptcy court has power to sell the property of the bankrupt subject to liens or free from liens, or free from some liens and subject to others. "The court of bankruptcy has jurisdiction and power to dispose of encumbered property of a bankrupt in any manner deemed best for the interest of all concerned." [Black on Bankruptcy (4 Ed.) sec. 660.] Such sale may be had "not only at the instance of the trustee in bankruptcy, but the lien creditor himself may petition the court to take charge of the property and order its sale, or for leave to conduct the sale himself, in either case first proving his debt and making at least a prima-facie showing as to the validity and priority of his lien." [Black on Bankruptcy, sec. 660.]

The property of the defendant bankrupt being in the custody of the court of bankruptcy, became subject to its jurisdiction to determine by plenary action or summary proceedings, as the nature of the case demanded, all adverse or conflicting claims thereto, whether of title or of lien. [In re Schermerhorn, 145 Fed. (C. C. A.) 341.] There was and is no question as to the validity of the deed of trust held by the plaintiff upon the property, and the property being in the custody of the law, the bankruptcy court had summary jurisdiction over it by orders made in bankruptcy proceedings. [5 Remington on Bankruptcy, sec. 2350.] The property being in the custody of the law, in the possession of a bankrupt whose possession was the possession of the court in bankruptcy, and the validity of the lien not being in question, the court had jurisdiction in summary prodeedings to order the sale of the property. The bankruptcy

1216

court, in ordering the sale of the property of a bankrupt, is not restricted to a sale made by the trustee in bankruptcy, but may order such sale to be made by commissioners appointed by the court or by an official auctioneer. [Loveland on Bankruptcy, sec. 565; 7 C. J. 236.] And the court may authorize a mortgagee to foreclose. [Loveland on Bankruptcy, secs. 135, 959.] The mortgagee may apply to a bankruptcy court by summary petition for foreclosure of a mortgage. [Brandenburg on Bankruptcy (4 Ed.) sec. 876.]

Under Order XII of the general orders in bankruptcy adopted and established by the Supreme Court of the United States, after the order is made referring the case to the referee, "all the proceedings except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee." The order in this instance was made after and according to notice given to the bankrupt and her husband, the defendants herein. The order was reviewable by the judge upon the petition of these defendants "setting out the error complained of." [Rule XXVII.] Therein, lay the remedy of the defendants, for an erroneous decision made by the referee.

Counsel for defendants, in their written argument, proceed upon the theory that because there was no breach of condition as measured by the rule followed in this State, such rule may be applied now and made effective in the state court in this collateral action. They cite no authority in support of their contention that, no objection having been made on the trial in the circuit court to the introduction of the note and deed of trust and trustee's deed, upon the ground that it was apparent there was no breach of condition, such objection was "timely and properly raised at the first opportunity." Such objection before the referee under the rule followed in this court would have been timely, and review of his adverse ruling thereon would have been timely. In the absence of any review, the order became final. The fact that in consideration of the governing law as declared by this court, the referee erred in holding there was under that law a breach of condition, is not an error which can be corrected in a collateral action, and by this court. Whether there was a breach of condition, was an issue, and a necessary one, to be determined by the referee preliminary to the making of the order he did make. The order was made upon a finding that there was a breach of condition, in a proceeding which the referee could entertain, and to which both this plaintiff and these defendants were parties. We hold that the principle of *res adjudicata* applies to the order. The trial court erred in finding for defendants upon the count in ejectment.

The trustee in bankruptcy took the title to the land subject to the equities and rights imposed upon it in the hands of the bankrupt.

[4 Remington on Bankruptcy, sec. 1042.] The trustee, however, did not take title to the homestead of the bankrupt. The validity of the plaintiff's deed of trust was not in dispute. It covered all of the land, in which, as the application and order show, was the homestead of the bankrupt and her husband, which they refused to release and which had not been set out to them. The court in bankruptcy could not administer exempt property, but could not deny the right of the mortgagee, under its deed of trust, to subject that property to the encumbrance of a concededly valid mortgage, carrying the homestead interest. In Collier on Bankruptcy (13 Ed.) vol. 1, page 333, it is said: "While, as a rule, the trustee has no power to sell the exempt property, he must sell it, where it is inseparable from other property, the expense of sale to be borne by the general estate; and the bankrupt is then entitled to his pro-rata of the proceeds. Thus, where all of a bankrupt's real estate is covered by a mortgage under which the mortgagee would have the right to sell and convey the title in fee discharged of any exemption, and the mortgagee submits his claim to the bankruptcy court, it may sell the land and shall allot to the bankrupt his homestead from the proceeds, but it has no power to order the amount to be paid to the mortgagee."

Necessarily, the lien of the mortgagee in this case covered the unassigned homestead, and, to the extent of the right to have satisfaction of the whole of the indebtedness. Foreclosure and sale of the land under the deed of trust took place on March 28, 1925. The lien of the deed of trust was paramount over the chattel mortgages and bill of sale given to the interpleader. The defendants could not free the growing crops from the lien of the deed of trust by the giving of chattel mortgages thereon, nor by the same means free them from the right of the plaintiff upon land to which title had already passed to the plaintiff. [Farmers' Bank of Hickory v. Bradley, 288 S. W. 774.] There was no severance of the growing crops by defendants. This was done by the receiver appointed by the court subsequent to the sale of the land. The interpleader could take no title superior to that of the defendants, and the title of defendants in the growing crops passed to the plaintiff under the sale.

Our conclusion is the judgment of the trial court must be reversed upon both counts of the petition, and the cause remanded and judgment entered for the plaintiff. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.