JAMES C. GRAVES and LOUIS W. STOLTE v. ELMER DAVIDSON, JOSEPH DAVIDSON and MARY A. DAVIDSON, Appellants.—68 S. W. (2d) 711.

Division Two, February 23, 1934.

*Roy Hamlin* and *F. D. Wilkins* for appellants.

*John G. Cable* for respondents.

COOLEY, C.—Ejectment for about 162 acres of land in Ralls County. The suit was filed in the circuit court of that county which court granted defendants, on their application, a change of venue and sent the case to the Louisiana Court of Common Pleas in Pike County, where plaintiffs obtained judgment for possession, monthly rents and one cent damages. All the defendants appealed. Plaintiffs' evidence tended to show the following:

Thurston N. Summers is the common source of title. In July, 1919, he sold and conveyed this land and about ten acres in Marion County to defendant Mary A. Davidson. She paid $4000 of the purchase price in cash and for the remainder, $15,000, gave a note payable to Summers, secured by deed of trust on the lands so conveyed to her and executed by herself and husband, Joseph M. Davidson, a defendant herein. On September 6, 1929, the Ralls County land was sold under the deed of trust by the trustee therein named, after advertisement as therein provided, and was bid in at the trustee's sale by plaintiff Graves for $11,800. By his direction the trustee made his deed to Graves and Stolte as grantees, they having agreed after the sale that Stolte should take a half interest. Rental value of the lands is $75 to $80 per month.

Plaintiffs claim title and the right to possession through such trustee's sale and deed. Defendants challenge the validity of said sale and deed. Defendant Elmer Davidson is the son of Joseph M. and Mary A. Davidson and claims right to possession as their tenant. Defendants offered no evidence.

Plaintiffs' petition is in the usual form. The answer of Joseph M. and Mary A. Davidson pleads in substance the purchase of the lands from Summers by her and the execution of the deed of trust to secure the $15,000 note to Summers for part of the purchase price; that the

three defendants are in possession, Joseph M. and Mary A., as owners and Elmer as tenant; that about April —, 1928, Summers, then owner and holder of said $15,000 note, died testate and plaintiff Stolte was appointed and qualified as administrator with will annexed of his estate and continued to act in that capacity up to the time of the sale; that "certain" heirs of Summers brought suit to contest his will and "after the filing" of that suit Stolte as such administrator "agreed with the defendant, Mary A. Davidson, that any interest then due and owing by said Mary A. Davidson on her note of $15,000 aforesaid would not have to be paid until after the suit contesting said will had been disposed of;" that said Mary A. Davidson, relying on said agreement, proceeded, through her tenant Elmer, to prepare sixty acres of the ground for wheat sowing and to purchase seed and fertilizer, "and sowed said ground to wheat which is now growing on said ground," all with the knowledge of Stolte; that thereafter "and immediately following an adjustment and settlement" of the will contest suit Stolte, as such administrator, "in violation of his agreement with defendant, Mary A. Davidson, and without notice to her," caused the trustee to advertise the land for sale and at the sale purchased it himself for approximately $4000 less than the "face value" of the note and $5000 less than the market value of the land; that the sale "was illegal, void and of no effect whatever; that there was no legal, proper, valid or sufficient notice given as by law in such cases made and provided."

Elmer Davidson's answer alleged that he had leased the premises "prior to September, 1929," and the lease had not expired, wherefore he claims the right to possession.

I. Appellants' first assignment of error is that the court erred in denying them a continuance. The cause was set for trial for December 3, 1929. On that day and when the case was called for trial defendants, through one of their attorneys, Mr. Wilkins, presented an application for continuance, verified on November 30, by their other attorney, Mr. Hamlin, stating in substance that Mr. Hamlin had certain named cases pending in the Federal Court at Hannibal which were to come up for disposition on December 2nd or 3rd, and because of which he would be unable to attend the Court of Common Pleas during the week beginning Monday, December 2nd, "and there is no other attorney connected with the case that is familiar with the facts, circumstances and evidence to proceed with the trial." No other reason for asking a continuance was stated. The court heard evidence pro and con on the application. The evidence offered by plaintiffs, opposing a continuance, tended to show that Mr. Hamlin's presence was not required at Hannibal that day and that as Hannibal was only twenty-six miles from Louisiana he could yet get to the latter place in time for the trial that day. Mr. Wilkins, for defendants, testified that he had just called up the deputy clerk of the

Federal Court who had informed him that Mr. Hamlin was in attendance there awaiting the call of a certain case in which he was counsel. Mr. Wilkins did not testify whether or not he was familiar with the facts and issues in the case.

 It is conceded that the matter of granting a continuance, especially for a reason such as that here assigned and where, as here, the party is represented by other counsel whose competency is not questioned. rests largely in the sound discretion of the trial court. Only where it appears that such discretion has been abused to the prejudice of the party seeking a continuance will an appellate court reverse because a continuance was denied. The trial court, in overruling the application in this case, intimated, among other reasons, that he thought Mr. Hamlin could come to Louisiana. Whether that finding was justified or not we are constrained to hold that there was no abuse of discretion in denying the continuance. There was no contention that any material witness was absent. If the alleged facts pleaded by defendants constituted any defense, a question we need not consider, they were not complicated and were within the knowledge of the defendants. If known to others there is no showing that such others were not present as witnesses. It does not appear that Mr. Wilkins had not been employed in the case long enough to acquaint himself with the facts so as properly to present defendants' case. As stated above, he did not testify that he was not sufficiently familiar with the facts to proceed and his competency to handle the case is not questioned. He lived in the county where the court was sitting; Mr. Hamlin did not. so there could be no disadvantage to defendants by reason of not having a local attorney appear before the jury. if that be a disadvantage. It appears clear to us that there was no abuse of the court's discretion in denying the continuance.

 II. Appellants' next assignment of error is the court's refusal to grant them a change of venue or, as they term it, the substitution of another judge to try the case. When their application for continuance was overruled they filed a verified application "for the substitution of another judge herein to hear and try this cause," stating as grounds therefor "that the plaintiffs, James C. Graves and Louis W. Stolte, have an undue influence over the mind of the judge of this court." The remaining allegations of the application and verifying affidavit are those usually found in an application for change of venue. The court denied the application and proceeded to call a jury and try the case. Defendants sufficiently preserved the point for review.

By whatever name it be called the application in question amounted to an application for change of venue because of the alleged undue influence of the opposite party over the mind of the judge. That is one of the statutory grounds for which a change of venue may

be peremptorily demanded in civil cases, Section 907, Revised Statutes 1929 (Sec. 907, Mo. Stat. Ann., p. 1186), and when applied for on such ground the cause must be sent to another forum unless the parties agree upon another judge or request the election of a special judge. [Sec. 911, R. S. 1929; Sec. 911, Mo. Stat. Ann. p. 1193; State ex rel. Dunlap v. Higbee, 328 Mo. 1066, 43 S. W. (2d) 825.] The ground herein assigned is not one of the grounds for which the judge is required by Section 908 of the statute to award a change of venue without application of either party. By express provision of said Section 907 no more than one change of venue can be granted either party and it is held that the same party cannot disqualify on the ground of prejudice or undue influence more than one judge, whether by one affidavit or by successive affidavits. [State ex rel. Hannon v. Woodson, 86 Mo. App. 253, where the question is fully discussed; Eudaley v. Kansas City, etc., Railroad Co., 186 Mo. 399, 85 S. W. 366.] Those cases convincingly show the reason for and the soundness of such holding. The right to a change of venue is purely statutory. [State ex rel. v. Woodson, supra; Eudaley v. Railroad, supra.] It has been held even in criminal cases, where the procedure upon disqualification of the judge differs from that in civil cases, that the defendant cannot disqualify more than one judge. [State v. Wagner, 311 Mo. 406, 279 S. W. 23.] To hold that a party might obtain a change of venue on account of the alleged bias of the judge and then disqualify the judge of the court to which the cause had been sent would be to permit such party to disqualify one judge after another and virtually to "pick his own judge." [Eudaley v. Railroad, supra, 186 Mo. l. c. 407.] The statute cannot be so evaded by calling the second application one for the substitution of another judge instead of one for a change of venue.

Appellants rely on State v. Myers, 322 Mo. 48, 14 S. W. (2d) 447. That was a criminal case which originated in the circuit court of Scotland County. A change of venue from the circuit was granted on the joint application of the prosecuting attorney and the defendant because of the admitted prejudice of the inhabitants of Scotland County and the other counties of that circuit and the case was sent to Adair County in another circuit. It was held that the defendant had a right to disqualify the judge of the Adair County Circuit Court on the ground of the latter's alleged prejudice and to have another judge provided. The judge of the Scotland County Circuit Court had not been disqualified and there had been no disqualification of a trial judge by the defendant nor substitution of another judge on his application prior to the filing of his application in the Adair Circuit Court. The Myers case is not authority for appellants' contention on the facts presented to us in this case.

It does not appear from appellants' abstract of the record which party applied for the change of venue from Ralls County nor on

what grounds. The abstract merely states that the suit was filed in the Circuit Court of Ralls County and "was removed by a change of venue to the Louisiana Court of Common Pleas." The application for the change and the order granting it are not shown. Appellants state in their brief here that the change of venue was granted on their application but do not state on what grounds. Respondents say in their brief that the application alleged prejudice against defendants on the part of both the inhabitants of Ralls County and the judge of that circuit court. That statement is not controverted by appellants. We do not mean to say that we take such statement in respondents' brief as a sufficient showing of facts which the law requires shall be presented by an abstract of the record. But when a party seeks reversal of the circuit court's judgment because of alleged error it is his duty to show in his abstract enough of the record and proceedings of the trial court to enable the appellate court to see whether or not error has been committed. Error is not presumed. It must be shown by the party asserting it. When a change of venue is granted the law requires the clerk of the court granting it to send to the court to which the cause is ordered removed a transcript of the record and proceedings, "including the petition and affidavit and order of removal." [Sec. 914, R. S. 1929, Sec. 914, Mo. Stat. Ann., p. 1197.] We must presume, absent a showing to the contrary, that this was done. The Louisiana Court of Common Pleas therefore is presumed to have had before it such petition and affidavit for change of venue and order granting the change, from which it may have appeared that defendants had disqualified one judge on the ground of alleged prejudice and therefore were not entitled to disqualify the judge of the court to which the cause had been sent. Such record would sustain the court's ruling, as we have pointed out. Right action rather than wrong on the part of the trial court will be presumed, absent a showing of wrong action. If the record was not such as to sustain the court's ruling it was incumbent on appellants to bring that record here so that this court might have the same before it and be enabled to pass upon the question. This they did not do. From the record presented error in the trial court's ruling does not appear.

 III. Appellants contend that the sale was premature. They did not raise that issue by their pleading but it is urged that plaintiffs' evidence so shows and that the trustee's sale and deed were therefore void and their demurrer to the evidence should have been sustained. This contention is based upon the fact that the *note* secured by the deed of trust was not due and payable until March 1, 1930, and that on its face it did not provide for acceleration of the due date because of nonpayment of interest annually or at stated times and

therefore the deed of trust could not be foreclosed until after maturity of the note.

The note was introduced in evidence but is not set out nor the provisions thereof shown in the bill of exceptions nor in appellants' abstract. The only evidence we have before us on this point is a recital in the deed of trust, which was introduced in evidence by plaintiffs. It describes the note secured thereby as a note for the principal sum of $15,000 "providing for interest at the rate of six (6) per cent, payable semi-annually," to begin drawing interest March 1, 1920. The deed of trust provided that should the grantors "fail or refuse to pay said debt, or the said interest, or any part thereof, when the same or any part thereof shall become due and payable according to the true tenor, date and effect of said note, then the whole shall become due and payable," and the trustee, at the request of the legal holder of the note shall proceed to advertise and sell the land, etc. Plaintiffs' evidence tended to show that there was about $1500 interest due when the foreclosure was made. The foreclosure was because of nonpayment of such past-due interest.

Appellants cite Owings v. McKenzie, 133 Mo. 323, 33 S. W. 802; Canton Trust Co. v. Durrett, 320 Mo. 1208, 9 S. W. (2d) 925; Wilson v. Reed, 270 Mo. 400, 405, 193 S. W. 819; Frye v. Shepherd, 173 Mo. App. 200, 158 S. W. 717. These cases do not hold that there may not be foreclosure of a deed of trust for nonpayment of interest prior to the maturity date of the principal as named in the note where the note provides that the interest shall be paid annually or at certain stated intervals, and the deed of trust securing it provides for foreclosure upon failure to pay such interest when due and payable according to the terms of the note, as in the instant case.

The Owings case, chiefly relied on by appellants, was a suit for the balance of a note after a sale of the land securing it and application of the proceeds to payment *pro tanto* of the note. It involved facts different from those here presented. So far as here applicable the court's holding is reflected in paragraph 5 of the syllabus:

"A promissory note is not affected as to the date of its maturity by the terms of a deed of trust securing it, declaring that it shall become due on default of payment of another note, *except for purposes of enforcing the mortgage security.*" (Italics ours.)

As pointed out in the later decision en banc in Rumsey v. Peoples Ry. Co., 154 Mo. 215, 246, 55 S. W. 615, the Owings case recognizes the validity of a provision in a deed of trust such as we have in the instant case "insofar as the enforcement of the mortgage security is concerned." In the Rumsey case it was held that a provision in a deed of trust authorizing foreclosure on default for thirty days in the payment of semi-annual coupon interest notes was valid and self-executing for the purpose of enforcing the mortgage security and justified a decree of foreclosure whether the principal debt was due

or not. [Wilson v. Reed, supra, recognizes that principle, as do Canton Trust Co. v. Durrett, supra, and Frye v. Shepherd, supra.] In the three last named cases the notes in question were held not to stipulate for payment of interest annually or at other stated intervals. In the instant case the note as described in the deed of trust provided that the interest was "payable semi-annually." There was a further provision that if the interest was not paid "when due" it should be compounded annually but we do not think that further provision amounted to a waiver by the holder of the note of his right to insist upon payment of the interest semi-annually as provided in the note and to enforce such payment by foreclosure of the deed of trust according to its terms. [See Waples v. Jones, 62 Mo. 440.] By express terms of the note the parties made the interest payable semi-annually. By the deed of trust they provided for foreclosure if the grantors failed to pay the interest when same or any part thereof became due and payable "according to the true tenor, date and effect of said note." That clause of the deed of trust was clearly meant to authorize foreclosure for nonpayment of the interest installments as they became due and payable semi-annually by the terms of the note without waiting until the principal debt became due. We see no reason why the parties might not competently so contract or why such provisions in the deed of trust should not be held valid. [See Rumsey v. Peoples Ry. Co., supra; Wilson v. Reed, supra.]

We deem it unnecessary to discuss other objections to the proceedings of the trial court suggested by appellants. We have examined them and think they are without substantial merit. The judgment of the circuit court should be and it is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.