Henry BROWDER (Plaintiff), Respondent,

v.

James E. MILLA (Defendant), Appellant.

No. 29350.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

Not to be reported in State Reports.

Robert G. McClintock, St. Louis, for appellant.

Thurman, Nixon & Blackwell, Jeremiah Nixon, Hillsboro, for respondent.

ELMO B. HUNTER, Special Judge.

This is an appeal by defendant (appellant) from a judgment for plaintiff (respondent) against defendant in the resultant sum of $1,924. The cause was tried to

the court, as a jury waived case, on issues formed by plaintiff's first amended petition, defendant's answer and first amended counterclaim, and plaintiff's amended reply to defendant's answer and first amended counterclaim. Plaintiff had sued to recover $2,232.91 under a written contract between the parties relating to the operation of defendant's farm by plaintiff. Defendant had counterclaimed for $4,188.75. The trial court found in favor of plaintiff on plaintiff's first amended petition in the sum of $2,049, and on Counts I, III and IV of defendant's first amended counterclaim. Defendant received a judgment of $125 on Count II of his amended counterclaim. Defendant complains of those findings adverse to him, and also insists that the trial court erred in denying his application for a change of venue based on the alleged prejudice of the trial judge.

Defendant, James E. Milla, owned a farm in Jefferson County, Missouri, and for several years plaintiff, Henry Browder, had been a hired hand on it. On March 1, 1953, they entered into a written contract, in which plaintiff was designated as employee and defendant as employer. The contract provided, among other things, that plaintiff was to manage and operate the farm for compensation consisting of a stated percentage (45%) of the gross sales of dairy products and all future increases of the employer's livestock then on the farm, and other items, and 45% of the feed on hand and unused at the termination of the contract. The contract was terminated on December 15, 1953, by defendant by proper notice. The parties were unable to settle their numerous claims, and this suit resulted.

■ Plaintiff filed a written motion with this court requesting that defendant's appeal be dismissed or the judgment of the lower court be affirmed for failure of defendant to comply with Section 1.08, Rules of the Supreme Court, 42 V.A.M.S., by not making a fair and concise statement of the facts without argument in his brief.

We have taken this motion with the case. There is some merit in plaintiff's motion. We have broad discretion in such matters. Vest v. Bialson, Mo.Sup., 293 S.W.2d 369. We exercise it on this occasion in defendant's favor with the suggestion that in the future greater care be taken to comply with the rule in order to avoid the unnecessary risk of having an appeal dismissed. The motion to dismiss defendant's appeal is overruled.

■ This being a jury waived case, our duty is to review it upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Section 510.310 RSMo 1949, V.A.M.S.; Murray v. Murray, Mo.Sup., 293 S.W.2d 436; Parks v. Thompson, Mo. Sup., 285 S.W.2d 687. The question for our determination is not merely one of whether the trial court's findings were supported by substantial evidence, but rather it is our duty to make our own independent findings of fact and reach our own conclusions as to where the weight of the competent evidence lies. Whatever findings the lower court may have made are in no sense binding on us, although in matters where the evidence is conflicting and close, we shall have due regard for the lower court's opportunity to judge the credibility of the witnesses. This is the established procedure in reviewing suits in equity. Our final duty is to affirm the judgment below or enter or direct such judgment as justice requires. Parks v. Thompson, supra; Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289; Minor v. Lillard, Mo.Sup., 289 S.W.2d 1; Cross v. Gimlin, Mo.Sup., 256 S.W.2d 812; Dye v. School District No. 32 of Pulaski County, 355 Mo. 231, 195 S.W.2d 874; Lynn v. Coates, Mo.Sup., 142 S.W.2d 1014; Lastofka v. Lastofka, 339 Mo. 770, 99 S.W.2d 46.

We first consider defendant's contention that the trial court erred in denying his ap-

plication for a change of venue because of the alleged prejudice of the judge. On Tuesday morning, February 22, 1955, the trial of this case began. After certain stipulations of fact were made and after considerable evidence had been presented on behalf of plaintiff but before plaintiff's case was completed, the trial judge requested the attorneys and the parties to retire from the courtroom for a conference on the matter. The court reporter apparently did not attend this conference. While we are without any exact report as to what occurred, we know that during this conference defendant's attorney through questions and answers related to the trial judge about what his defense would show. Apparently the trial judge's reaction to the outlined proposed defense, and to other discussion that occurred there concerning the case, caused the defendant to believe that the trial judge was prejudiced. After the conference the trial continued the remainder of Monday afternoon during which time plaintiff completed his case and defendant put on his first witness. The trial was then adjourned to the following Friday morning.

On Thursday, February 24, 1955, defendant filed his application for change of venue charging that the trial judge "is prejudiced against the defendant, James E. Milla." On Friday morning, February 25, defendant's counsel, pursuant to notice given by him, called up for hearing his petition for change of venue and presented both it and his affidavit in support thereof. The trial judge denied it as coming too late.

Defendant claims that the first time he knew the trial judge was prejudiced was on the occasion of the mentioned conference, and as he had applied for a change of venue within five days of such knowledge first coming to him he was entitled to the change of venue as a matter of right. Plaintiff claims the application was not timely, having been made after the trial commenced, and was properly refused.

The right to a change of venue is not a constitutional right, but is rather a statutory privilege and does not exist except as provided by statute. State ex rel. Dilliner v. Cummins, 338 Mo. 609, 92 S.W. 2d 605; Graves v. Davidson, 334 Mo. 882, 68 S.W.2d 711; State ex rel. State Highway Commission of Missouri v. Hartman, 226 Mo.App. 604, 44 S.W.2d 169.

The primary rule of construction of a statute is to ascertain the law maker's intent from the words used, if possible, and to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object. The manifest purpose of the statute, considered historically, is properly given consideration. A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo.Sup., 277 S.W.2d 544; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W. 2d 920; Producers Produce Co. v. Industrial Commission of Missouri, Division of Employment Security, Mo.App., 281 S.W. 2d 619; Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77. Certainly the law favors a construction of a statute which will harmonize with reason and which tends to avoid unjust, absurd, unreasonable or oppressive results. Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832; Ellis v. State Department of Public Health and Welfare, Mo.App., 277 S.W.2d 331, affirmed 285 S.W.2d 634; Kansas City v. Travelers Insurance Co., Mo.App., 284 S.W.2d 874.

The applicable statute provides that: "No defendant shall be allowed a change of venue unless the application therefor be made before the filing of his answer to the merits, except when the cause for such change of venue shall arise, or information or knowledge of the existence thereof shall first come to him, after the filing of such answer, in which case such application shall state the time when the cause arose, or when applicant acquired information and knowledge thereof, and the

application must be made within five days thereafter." Section 508.120 RSMo 1949, V.A.M.S. See also Supreme Court Rule 3.20.

Section 508.090 RSMo 1949, V.A.M.S., names those causes for which a change of venue may be awarded: "That the judge is interested or prejudiced * * *."

In the past in construing change of venue statutes as they then existed, our appellate courts, upon one ground or another, and usually upon the ground that it was not timely, have held that an application for a change of venue for prejudice of the trial judge made after the trial is actually in progress will be denied. Massey v. Fitzpatrick, Mo.Sup., 175 S.W.2d 780; State ex rel. Reeder v. Foard, en Banc, 268 Mo. 300, 188 S.W. 71; Key v. Key, Mo.App., 93 S.W.2d 256; Planters' Bank v. Phillips, Mo.App., 186 S.W. 752; Savings Finance Corporation v. Blair, Mo.App., 280 S.W.2d 675; McArthur v. Kansas City Elevated Railway Co., 123 Mo.App. 503, 100 S.W. 62; Stone v. Boston, Mo.App., 218 S.W.2d 783; Junior v. Missouri Electric Light & Power Co., 127 Mo. 79, 29 S.W. 988; Methudy v. Methudy, Mo.App., 238 S.W. 562. See also 92 C.J.S., Venue, § 164, page 879; 56 Am.Jur., Venue, Sec. 62, Page 64.

Certainly the present statutory sections do not provide that a party has the absolute right to a change of venue if it is applied for any time within five days of the discovery of the claimed prejudice. Nor do we believe the legislature had such intention in mind. To interpret the statute as defendant proposes would mean that a party could bring any trial at any stage thereof to a halt, and in effect cause a mistrial thereof, merely by filing in proper form for a change of venue. We think such a construction of the statute would be unreasonable. As stated by our Supreme Court in State ex rel. Reeder v. Foard (en Banc), supra, 188 S.W. loc. cit. 74: "It would be a hazardous doctrine to say that, after a judge has partially heard a case, a party thereto could stop that hear-

ing by procuring a change of venue upon the ground of prejudice of the judge, then actually trying the case. Under our previous holdings as to the character of this proceeding, this application, in so far as the prejudice of the judge is concerned, comes too late."

Also, when applications for a change of venue have been sought after the trial of a case has commenced, our courts in the past upon occasion have considered what their own record, pleadings, files and proceedings show upon the question of good faith. Planters' Bank v. Phillips, supra; St. Louis & S. F. R. Co. v. Big Three Mining Co., 139 Mo.App. 272, 123 S.W. 70; Padberg v. Padberg, Mo. App., 78 S.W.2d 554, 555. An application for a change of venue is not to be considered as made in good faith if it is made for a cause not authorized by the statute on the subject.

The record of this case shows that while defendant charges the trial judge with prejudice, such charge is based entirely on what occurred in the conference in the judge's chambers on the first day of trial. While the trial judge in considering the facts of the case then before him may have been mistaken in his tentative opinion as to whether or not plaintiff appeared to have a valid claim, or defendant appeared to have a legally sufficient defense or meritorious counterclaim, such mistake, if any, was the result of the trial judge endeavoring to carry out his judicial functions during the trial. Of necessity, as a jury waived trial progresses, a trial judge must consider and possibly formulate tentative opinions concerning such matters as the probative value of certain testimony, the credibility of certain witnesses, what law should govern particular issues inherent in the trial, and finally must decide who, if anyone, is entitled to prevail therein on the law and the facts. In so doing he is exercising his judicial trial function, and although while so doing he may commit legal error or be mistaken as to his

conclusions of law or fact, he is not as a result to be successfully charged with prejudice within the meaning of Section 508.090 RSMo 1949, V.A.M.S., so as to entitle the aggrieved party to a change of venue. The proper remedy for such situations ordinarily is for the aggrieved party to take an appeal. We hold that the application for change of venue was properly denied.

■ Defendant's second contention is that the trial court erred in finding in favor of plaintiff on Count IV of defendant's amended counterclaim seeking $469.75 for the reason that the uncontroverted evidence was that plaintiff was overpaid for the months of March and April, 1953, in the amount of $469.75 as a result of a mistaken calculation of plaintiff's share of the milk checks for those months. Defendant's reasoning is that plaintiff should have been paid $75 for the first 15 days of March (one-half of his monthly salary rate prior to the contract) plus his contractual share of the proceeds of the milk sold from the 16th through the 31st of March, instead of 45% of the net proceeds of sales of milk for the entire month of March. Plaintiff contends the trial court erred in permitting defendant to file Count IV for the first time on the morning the trial of the case was to commence. However, so far as the record discloses, plaintiff did not claim surprise or request a continuance in order to prepare a defense to the count, but only generally objected to such filing. Under these circumstances it was discretionary with the trial judge as to whether or not to permit the amended counterclaim containing Count IV. We find no abuse of that discretion. Section 509.490 RSMo 1949, V.A.M.S.; Brinkmann Realty Co. v. Deidesheimer, Mo.App., 201 S.W.2d 503; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360.

■ The record discloses that for both March and April, plaintiff was paid 45% of the amount defendant received from Pevely Dairy, which amount was the gross sales price of the milk less the cost of transportation charged by the dairy. Calculating plaintiff's share in this manner, resulted in defendant's paying 55%, and plaintiff 45% of the transportation costs, when as defendant contends, and plaintiff admits, the contract specifically provided that plaintiff was to pay 100% of the transportation costs. Plaintiff endeavors to defeat this claim of overpayment by showing as a defense that although the contract didn't become effective until March 15th, plaintiff had paid for all the dairy feed and concentrates bought for that entire month, and that this was the reason that defendant had never asserted any claim against him under the contract terms for overpayment in March and April. The trial court found that the $469.75 claimed as overpayment in March and April was for labor, feed and supplies purchased during the first part of March before the contract became effective. In so doing the trial court stated that it was accepting plaintiff's evidence on this as corroborated somewhat by the fact that defendant apparently made no effort to recoup the amount during the following six months of the contract when the parties seemingly were getting along all right. However, plaintiff merely testified that he had paid for the feed from March 1st to March 15th. There was no testimony or evidence that the labor, feed and supplies for that period had cost $469.72 or any particular amount. Further, the record does indicate, as defendant contends, that the erroneous method of calculation used by the parties to determine the amount owed to plaintiff in March and April resulted in an overpayment of exactly $469.75. We acknowledge we should give proper deference to the trial court's findings on controverted matters, but after so doing, and in view of the record, we conclude that defendant is entitled to prevail on this particular issue. While plaintiff has questioned the admissibility of some of defendant's evidence on this issue, we have based our conclusions on only that evidence properly admitted by the trial judge. Defendant is entitled to a finding in his favor

on Count IV of his amended counterclaim in the sum of $469.75.

■■■ Defendant's third contention is that the Court erred in awarding plaintiff the sum of $621 as plaintiff's share of milk checks for November and 15 days of December, 1953, claiming that the uncontroverted evidence was that plaintiff's total share of said checks was only $419.69. A portion of the deposition taken of defendant was read into evidence by plaintiff. In it defendant testified that the milk check he received for the month of November, 1953, was $963.64 and that the milk check for December, 1953, was maybe $125, $130, smaller than the one for November, he thought. Plaintiff offered no evidence, and there was none to show what the transportation costs were for those months (and plaintiff concedes he is the one that is obligated to pay those costs) except as contained in Defendant's Exhibits 5 and 6. These exhibits appear to be the monthly statements of Pevely Dairy showing its purchase of milk from defendant for November and December, 1953. Plaintiff complains of the trial court having erred in their admission in evidence. Without them there would of necessity be a failure of proof of plaintiff's claim on this item as there would be no evidence of the transportation charges for the milk in question and thus no way to determine what, if anything, defendant owed plaintiff. Defendant contends they were properly admitted in evidence. Under the circumstances, we feel that plaintiff will not wish to be penalized by further insistence that they are not admissible, but will agree with our holding that on the record presented they were properly admitted in evidence. We acknowledge difficulty in ascertaining from them just which items are properly considered as transportation charges. Our uncertainty is resolved in defendant's favor as plaintiff has the burden of proof on this issue. Defendant's Exhibit 5 shows that for the month of November, 1953, the gross amount received by defendant for milk was $963.64. Plaintiff is entitled to 45% of

that sum, less transportation charges. According to Exhibit 5 these charges total $122.26. Thus plaintiff is entitled to $433.64 less $122.26, or $311.38 for the month of November, 1953.

Defendant's Exhibit 6 shows the milk account for December, 1953. However, we look only to that part concerning the first 15 days of December, 1953, the termination date of the contract. Exhibit 6 gives the number of pounds of milk purchased by the dairy each day and the price per pound. The number of pounds for those first 15 days total 87.13, and the price per pound was $4.9975. The purchase price for the 87.13 pounds was $391.86. Exhibit 6 does not give the transportation charges on a daily basis, but does give the monthly total at $246.05. The number of pounds of milk transported for the entire month was 187.62. On a pro rata basis, the transportation charges for the 87.13 pounds was $114.47. Plaintiff is entitled to 45% of $491.86 ($176.33) less the transportation charges of $114.47, which sum is $67.86.

For November and December plaintiff was entitled to $311.38 plus $67.86 for a total sum of $379.24. On our remand of this cause, the trial court is directed to correct the judgment accordingly.

■■ Defendant next charges that the trial court erred in finding in favor of plaintiff on Count III of the amended counterclaim, asserting that (1) the evidence shows plaintiff owed defendant $129 for twine defendant purchased for plaintiff at plaintiff's request, and (2) that defendant was damaged in the amount of $519.16 as a result of plaintiff's failure to properly use and maintain defendant's machinery and equipment entrusted to him under the contract.

The undisputed testimony is that plaintiff wanted some baling twine for his use on the farm. He asked defendant to purchase it for him in St. Louis. Pursuant to plaintiff's request defendant did buy the binding twine for plaintiff at a cost of $129. Plaintiff used some of the twine.

When he was eventually presented with the bill for it by defendant he refused to pay it. At the trial he stated his reason for refusing to reimburse defendant for the twine was that at the time this employment contract was terminated most of the twine remained unused in defendant's barn and defendant still had it.

When defendant with his own money, at plaintiff's request, purchased the twine for plaintiff and delivered it to plaintiff, title to that twine was in plaintiff, and plaintiff was then indebted to defendant for its purchase price. 2 Am.Jur., Agency, Sec. 294, Page 232; Strong v. Turner, Mo.App., 122 S.W.2d 71; Freund Motor Co. v. Alma Realty and Investment Co., 235 Mo.App. 587, 142 S.W.2d 793. So far as we can determine from the record, when plaintiff's employment ceased upon the termination of the contract he did leave the remaining twine in defendant's barn where it apparently remained at the time of the trial. On this record we conclude that defendant is entitled to be reimbursed $129 for the purchase of the twine for plaintiff, and that as between them, plaintiff is the owner of the twine remaining unused at the time of the termination of the contract. On our remand of this cause, the trial court is directed to enter his findings for defendant on Count III of the amended counterclaim in the sum of $129.

We next turn to defendant's complaint concerning Count III of his amended counterclaim that he was damaged $519.16 as a result of plaintiff's failure to properly use and maintain defendant's machinery and equipment entrusted to him under the contract. We have carefully reviewed the entire record concerning this subject and agree with the trial court that defendant failed to meet the burden of proof placed upon him by law in charging plaintiff with having failed to properly use and maintain defendant's equipment and machinery.

Defendant's final contention is that the court erred in awarding plaintiff a money judgment for his interest in the feed and grain. Defendant asserts that under the express terms of the contract, plaintiff was entitled to such feed and grain in kind only and that unless defendant made a demand for it and was refused, he is not entitled to a money judgment.

Plaintiff suggests that defendant is not entitled to make this contention as Section 509.410 RSMo 1949, V.A.M.S., provides that the objection of no demand for the subject matter of a suit has been made prior to its institution is not available unless it is expressly set up by way of defense in the answer or replication, and is also accompanied with a tender of the amount due. However this may be, we note that plaintiff testified that at the time the contract was terminated, he did make a demand on defendant to pay him off and that defendant refused to do so then and has continued to refuse. This testimony of plaintiff is uncontroverted. This testimony coupled with other testimony contained in the record convinces us that defendant would not and did not recognize plaintiff's claim to the feed and grain and probably continued to feed it to the stock on the farm. Plaintiff is therefore entitled to a recovery in money damages. Citizens' Bank of Sikeston v. Scott County Milling Co., 210 Mo.App. 603, 243 S.W. 433; Milliken v. Larrabee, Mo.App., 192 S.W. 103; Sigmund v. Lowes, Mo.App., 236 S.W.2d 14; Delay v. Douglas, Mo.App., 164 S.W. 2d 154; Blum v. Frost, 234 Mo.App. 695, 116 S.W.2d 541; Norman v. Key, Mo.App., 222 S.W. 499.

We have examined all of the authorities of both parties cited in support of the numerous contentions made by them in this cause, and find nothing in them inconsistent with the views we have expressed. This cause is reversed and remanded, and the lower court is directed to enter its judgment herein in accordance with the views and findings of this opinion.

ANDERSON, P. J., and MATTHES, J., concur.