In the Matter of Robert Dale KAMPEN, and Gladys M. Kampen, d/b/a Kampen Farms, Debtors.

Charles E. RUBIN, Trustee, Movant,

v.

Delmar KAMPEN, and the Community Bank of Chillicothe, Respondents.

Bankruptcy No. 83–00076–SJ–W–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Nov. 23, 1984.

Robert A. Pummill, Barker, Rubin and Sonnich, Kansas City, Mo., for trustee.

Ronald S. Weiss and Jerald S. Enslein, Berman, DeLeve, Kuchan and Chapman, Kansas City, Mo., for Delmar Kampen.

Robert Cowherd, Chapman, Chapman and Cowherd, P.C., Chillicothe, Mo., for Community Bank of Chillicothe.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT AWARDING PROCEEDS OF CROPS TO THE TRUSTEE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

The parties filed a "joint motion for order ascertaining entitlement to proceeds" on May 18, 1984. In the same joint motion, the parties stipulated the facts which they deem to be essential to resolution of the controversy which they seek to have resolved by the court. The stipulation is reproduced in the marginal note.[1] These

---

1. A copy of the stipulations of fact between the parties is attached hereto and is hereby incorporated by reference as the court's findings of fact contemplated by Rule 7052 of the Rules of Bankruptcy Procedure.

STIPULATION OF FACTS

The undersigned do hereby stipulate and agree that the following facts are true, and the documents attached hereto as exhibits are genuine:

1. The Debtors, at all times pertinent hereto, were engaged in farming operations in Caldwell County, Missouri. Specifically, said farming operations were conducted on real property owned by the Debtors and located in Caldwell County, Missouri, and more particularly de-

scribed in "Exhibit 1" attached hereto and incorporated herein.

2. At all times pertinent hereto, the Debtors resided in Caldwell County, Missouri.

3. On October 2, 1980, the Bank filed a Financing Statement in the office of the Recorder of Deeds of Caldwell County, Missouri, a copy of which is attached hereto, incorporated herein and marked "Exhibit 2". However, said Financing Statement was not recorded in the Real Estate Mortgage Records of the Recorder of Deeds of Caldwell County, Missouri. Said Financing Statement ("Exhibit 2") did not include a description of the real property on which the crops which are the subject matter of this suit were growing or were to be grown.

4. On April 15, 1981, the Debtors signed a Promissory Note to the Bank in the principal sum of $300,000. A copy of said Promissory Note is attached hereto, incorporated herein, and marked "Exhibit 3".

5. A Deed of Trust, a copy of which is attached hereto, incorporated herein and marked "Exhibit 4", was filed with the Recorder of Deeds of Caldwell County, Missouri, on April 17, 1981, and recorded in Book 87 at page 225.

6. A deficiency balance presently exists upon the aforesaid Promissory Note ("Exhibit 3").

7. On January 13, 1983, the Debtors filed a Petition for Relief with the Clerk of this Court pursuant to 11 U.S.C. Chapter 11.

8. On March 15, 1983, the Debtors elected to participate in the United States Department of Agriculture PIK Program.

9. On June 22, 1983, Delmar Kampen loaned the Debtors $142,000 in order to enable them to plant crops on the aforesaid real property referred to in paragraph number 1 above, which includes the property described in "Exhibit 4" above. The aforesaid loan, which is evidenced by a Promissory Note, a copy of which is attached hereto, incorporated herein and marked "Exhibit 9", was not made more than 3 months before the crops which are the subject matter of this suit became growing crops by planting or otherwise.

10. The Debtors and Delmar Kampen executed and entered into a Security Agreement, dated June 22, 1983, a copy of which is attached hereto, incorporated herein and marked "Exhibit 5".

11. The aforesaid Security Agreement marked "Exhibit 5" included a description of the real property referred to in paragraph number 1 above upon which the crops which are the subject matter of this suit were grown, growing or to be planted.

12. Robert Kampen and Delmar Kampen executed a Financing Statement, a copy of which is attached hereto, incorporated herein and marked "Exhibit 6", which was filed at 8:35 a.m. on June 27, 1983, with the office of the Recorder of Deeds of Caldwell County, Missouri, but not recorded in the Real Estate Mortgage Records. Said Financing Statement, ("Exhibit 6") covered the crops (which are the subject matter of this suit) grown, growing or to be planted on the aforesaid real property referred to in paragraph number 1 above, and contained a description of said real property.

13. On July 19, 1983, this Court entered an Order modifying the automatic stay and permitting the Bank to foreclose upon the aforesaid Deed of Trust ("Exhibit 4").

14. On July 29, 1983, this Court entered an Order converting the Debtors' bankruptcy case from 11 U.S.C. Chapter 11 to 11 U.S.C. Chapter 7.

15. Charles E. Rubin was appointed and presently serves as Trustee of the Debtors' bankruptcy estate.

16. Robert Kampen and Delmar Kampen executed a Financing Statement, a copy of which is attached hereto, incorporated herein and marked "Exhibit 7", and filed said Financing Statement at 9:00 a.m. on September 16, 1983, with the office of the Recorder of Deeds of Caldwell County, Missouri. Said Financing Statement ("Exhibit 7") contained a description of the aforesaid real property described in paragraph number 1 above upon which the crops (which are the subject matter of this suit) were growing or to be grown. Said Financing Statement ("Exhibit 7") was recorded in Book 88 at page 93.

17. On September 16, 1983, at 1:30 p.m., the Deed of Trust ("Exhibit 4") was foreclosed. The Bank was the successful bidder at said foreclosure sale.

18. Pursuant to agreement of the parties herein, in the fall of 1983 (but subsequent to September 16, 1983), the crops (which are the subject matter of this suit) which were growing on the aforesaid real property described in paragraph number 1 above, were harvested. The following proceeds were received from the harvest of the aforesaid crops: $27,120 for the corn crop; and $27,205.20 for the soybean crop.

19. On or about November 16, 1983, the Trustee received three PIK entitlements for 2,955 bushels of corn, 3,706 cwt of sorghum, and 1,033 cwt of sorghum. Copies of said PIK entitlements are attached hereto, incorporated herein and marked "Exhibit 8–a", "Exhibit 8–b", and "Exhibit 8–c", respectively.

20. In December, 1983, and January, 1984, the Trustee converted the aforesaid PIK entitlements into cash and deposited the proceeds in an escrow account with the Bank. The following proceeds were received:

   a. $9,396.90 for the corn ("Exhibit 8–a");

   b. $17,937.05 for the sorghum ("Exhibit 8–b"); and

   c. $647.71 for the sorghum ("Exhibit 8–c").

21. The Trustee received and deposited in the aforesaid escrow account a check from the United States Department of Agriculture in the sum of $6,127.50, representing funds received as a result of the Debtors' participation in the Unit-

facts are summarized as follows for the purpose of the court's acting upon their material portions.

1. The Community Bank of Chillicothe attempted to perfect a security interest in all livestock and other farm products by filing a financing statement with the recorder of deeds of Caldwell County on October 2, 1980.

2. The Community Bank of Chillicothe also has a perfected security interest on certain land in Caldwell County and the debtors are in default on their payments against it.

3. On January 13, 1983, the debtors commenced the within chapter 11 proceedings, and, on March 13, 1983, elected to participate in the United States Department of Agriculture PIK program.

4. On June 22, 1983, Delmar Kampen loaned the debtors $142,000.00, taking a security interest in "all of the debtors' crops and products thereof grown or growing, or planted within six months prior to the date of execution hereof on certain real estate located in Caldwell County, Missouri," which is particularly described in the security agreement. A financing statement was filed in the office of the recorder of deeds.[2]

5. The Community Bank of Chillicothe was granted relief from the automatic

ed States Department of Agriculture corn and grain sorghum diversion programs.

22. The Trustee employed, with the consent of the parties herein, Delmar Kampen to harvest the aforesaid soybean crop. As a result, the Trustee paid Delmar Kampen the sum of $5,280 for the cost of said harvesting.

23. The Trustee has expended the sum of $69 as an expense in order to obtain a Trustee's Bond pursuant to the Order of this Court.

24. The principal amount held in the aforesaid escrow account has and continues to accrue interest.

BERMAN, DeLEVE, KUCHAN & CHAPMAN

By: *Ronald S. Weiss*
Ronald S. Weiss

By: *Jerald S. Enslein*
Jerald S. Enslein
1006 Grand Avenue, Suite 600
Kansas City, Missouri 64106

ATTORNEYS FOR DELMAR KAMPEN

CHAPMAN, CHAPMAN & COWHERD, P.C.

By: *Robert Cowherd*
Robert Cowherd
P.O. Box 218—903 Jackson
Chillicothe, Missouri 64601

ATTORNEY FOR COMMUNITY BANK

BARKER, RUBIN & SONNICH

By: *Robert A. Pummill*
Robert A. Pummill
911 Main
1313 Commerce Tower
Kansas City, Missouri 64105

ATTORNEY FOR CHARLES RUBIN, TRUSTEE

---

2. Filing of the financing statement, according to the stipulation between the parties, on June 27, 1983, in the office of the county recorder of Caldwell County.

stay on July 19, 1983, to foreclose on the real property.

6. The chapter 11 proceedings were converted to chapter 7 proceedings on July 29, 1983.

7. After September 16, 1983, the crops which are the subject matter of this controversy were harvested and $29,120.00 was received for the corn crop and $27,205.20 for the soybean crop. In December 1983 and January 1984 the trustee converted to cash certain PIK entitlements which he had received on or about November 16, 1983. The proceeds which he received were as follows:

$ 9,396.90 for corn
$17,937.05 for soybeans
$   647.71 for soybeans

8. Additionally, "[t]he Trustee received and deposited in the aforesaid escrow account a check from the United States Department of Agriculture in the sum of $6,127.50, representing funds received as a result of the Debtors' participation in the United States Department of Agruculture corn and grain soybean diversion programs."

### The Contentions of the Respective Parties

Each of the parties to this controversy has filed extensive briefs in which they have artfully and well employed their authorities and arguments. Their respective basic contentions are briefly summarized in the paragraphs which follow.

### Delmar Kampen

Delmar Kampen contends that, "in order to induce [him] to agree to the [postbankruptcy] loan, the Debtors falsely represented that they had received the necessary authorization from the Court to incur secured debt."

"[A]pproximately three months after the loan was made, the Bank foreclosed on a deed of trust relating to a portion of the Debtors' property upon which the crops in question were growing. The Bank asserted that because the crops were growing and unsecured at the time of the fore-closure and subsequent sale that the crops passed with the land ... [but] [t]he Bank failed to obtain any security interest in any of those items."

### Community Bank of Chillicothe

Delmar Kampen's "security agreement contains no description of 'proceeds' and therefore fails to comply with Section 400.9–203."

"Because of [the] treatment of crops as an accessory to the land, the Missouri courts have long held that those crops pass to the purchaser upon foreclosure." See Section 443.290 RSMo.

### The Trustee in Bankruptcy

Delmar Kampen's security interest "is pursuant to a lien granted without leave of this Court after the filing of the Chapter 11 Petition and in violation of the automatic stay provisions of 11 U.S.C. Section 362(a)(4). Further, the financing statement and security agreement are defective in that the financing statement speaks of PIK 'assignments' rather than 'entitlements,' the security agreement does not grant a security interest in contract rights, general intangibles or accounts, and that the first financing statement filed by Delmar Kampen does not contain a legal description of the property upon which the crops are growing or are to be grown."

"The Bank failed to include a description of the real estate in their filed financing statement, did not obtain a security agreement as required for a security interest, and failed to take possession of the property before claiming entitlement to rents and profits under the Deed of Trust."

### Conclusions of Law

The following are the legal principles which the court must apply to the stipulations of fact made by the parties. Postpetition security interests granted by a debtor to another person must, as a prerequisite to their being honored, be approved by the court or by operation of law. See section 549(a) of the Bankruptcy Code

 

which provides for the avoidance of any post-petition transfer which "is not authorized under this title or by the court." See also *Matter of Isis Foods, Inc.*, 37 B.R. 334, 336, n. 3 (W.D.Mo.1984), holding that such authority must be granted. *prior to* the transfer, rather than afterward.[3] These simple but binding imperatives require that the court not honor the security interest of Delmar Kampen.[4]

In order to perfect a security interest in growing crops, a creditor must, in a financing statement, describe the crops with such particularity as would permit discovery of their location by reasonable inquiry. *Matter of Wiskur*, 31 B.R. 39 (Bkrtcy.W.D.Mo.1983); *Matter of Johnson*, 21 B.R. 484 (Bkrtcy.W.D.Mo.1982). But there is no description of any crops in the security agreement or financing statement of the Community Bank of Chillicothe. Under the circumstances of this case, the Missouri provision that one having a deed of trust in real property is ordinarily entitled to growing and unsevered crops at the time of the foreclosure sale has no application when the trustee's lien intervenes before any foreclosure sale is held.[5]

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DE-CREED that the abovementioned proceeds of crops are property of the bankruptcy estate and must therefore be turned over to the trustee in bankruptcy.

---

**3.** In the footnote cited, the district court stated as follows:

"The court is not impressed by Dubuque's suggestion that the bankruptcy court in considering the propriety of the payments some twelve months after the fact thereby authorized them under section 549(a)(2)(B). It would appear that proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attach under section 549; however, that procedure was simply not followed here."

**4.** See *Matter of Isis Foods, Inc., supra*, note 3.

**5.** The trustee's hypothetical lien attached to the growing crops at the time of the filing of these bankruptcy proceedings. The situation is therefore tantamount to that in which the crops were actually severed prior to the foreclosure hearing.

"It was held by this court years ago that a conveyance of land carried the crop of wheat growing upon it, owned by the vendor. Growing wheat, it was held, is a part of the freehold, and passes along with the land on

which it is sown ... So, too, the purchaser of mortgaged premises at a foreclosure sale is entitled to the crops which were sown by the mortgagor and were growing upon the land at the date of the sale." *Hayden v. Burkemper*, 101 Mo. 644, 14 S.W. 767 (1890).

"The defendants could not free the growing crops from the lien of the deed of trust by the giving of chattel mortgages thereon, nor by the same means free them from the right of the plaintiff upon land to which title had already passed to the plaintiff. *The Farmers Bank of Hickory v. Bradley*, 315 Mo. 811, 288 S.W. 774. There was no severance of the growing crops by defendants. This was done by the receiver appointed by the court subsequent to the sale of the land." *Canton Trust Co. v. Durrett*, 320 Mo. 1208, 9 S.W.2d 925, 929 (1928).

"We have uniformly held that neither the owner of the land nor his grantee could free the growing crops of the lien of the deed of trust, *except by an actual severance from the soil before possession taken or foreclosure had under the deed of trust*." *Farmers Bank of Hickory v. Bradley*, 315 Mo. 811, 288 S.W. 774, 775 (1926) (Emphasis added.).